IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHANNON ORANDA JEFFERIES,          )
                                   )
            Plaintiff,             )
                                   )
      v.                           )          1:18-cv-00223
                                   )
UNC REGIONAL PHYSICIANS            )
PEDIATRICS and ERIC WELCH,         )
                                   )
            Defendants.            )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This is an employment discrimination action by Plaintiff Shannon Jefferies, proceeding pro se. Jefferies's sole remaining claim is one of retaliation in violation of 42 U.S.C. § 2000e et seq. ("Title VII") because UNC Regional Physicians Pediatrics ("Regional") terminated her employment. Before the court is Regional's motion for summary judgment (Doc. 22.) The motion is fully briefed and ready for decision. For the reasons discussed below, Regional's motion will be granted.

## I.  BACKGROUND

Viewed in the light most favorable to Jefferies as the nonmoving party, the facts reflect the following:

Jefferies is a black woman who worked as a Certified Medical Assistant ("CMA") at Regional from September 2014 to June 19, 2017. (Doc. 5-1 at 1.) During the summer of 2016, Cornerstone Healthcare

("Cornerstone"), Jefferies's former employer, merged with Regional, resulting in tension between the two staffs. (Doc. 23-1 at 2-3; Doc. 23-3 at 3.)

Under the attendance policy at Regional, employees were disciplined after the occurrence of a specific number of unscheduled absences and tardies, with each tardy counting as half an occurrence. (Doc. 23-1 at 3.) After three occurrences, employees received an oral reminder. (<u>Id.</u> at 18). After five occurrences, employees received a written reminder. (<u>Id.</u>) After six occurrences, employees received a final reminder. (<u>Id.</u>) And after seven occurrences, employees would be terminated. (<u>Id.</u>) In January 2017, Regional's Practice Manager, Eric Welch, who was Jefferies's immediate supervisor, gave all employees a "clean slate" with respect to attendance, meaning that each employee began 2017 with zero occurrences. (Doc. 23-1 at 4; Doc. 23-2 ¶ 6.)

Between January and June 2017, Jefferies received several disciplinary actions from Welch. On March 20, 2017, Welch issued Jefferies an oral reminder based on three unscheduled absences, which Jefferies signed on March 21, 2017. (Doc. 23-1 ¶ 15; Doc. 25-7 at 2.) Jefferies later became suspicious that Welch was not equally enforcing the attendance policy against former Cornerstone employees and complained to Welch's supervisor, Becca Wohlgemuth. (Doc. 23-7 at 2.) During this time Allison Skeen, CMA, who is

white, informed Jefferies that she had also received an oral reminder for attendance policy violations. (Doc. 23-4 at 29.)

On May 11, 2017, Welch issued Jefferies a second oral reminder based on complaints from coworkers and a patient's mother. (Doc. 23-1 ¶ 16; Doc. 23-2 at 8.) The coworkers had complained that Jefferies had slammed down a clipboard at the registration desk and stated that "someone was 'being a bitch.'" (Doc. 23-2 at 8-9.) On May 10, 2017, a patient's mother told an office manager that she had an exchange with Jefferies that was "very inappropriate" when Jefferies accused her of "[having] an attitude problem this morning" and Jefferies "was rude to her the rest of the visit and just made her feel uncomfortable."[1] (Doc. 23-2 at 8-10; Doc. 25-12 at 4.) Welch signed the oral reminder on May 23, 2017, but Jefferies refused to sign and instead submitted two written rebuttals disputing the accuracy of these complaints.[2] (Doc. 23-1 ¶¶ 16-17; Doc. 23-2 at 11-15.) Later that day, Jefferies emailed Welch and Wohlgemuth stating that she felt she was "being singled out" and "targeted" due to her race, ethnicity, internal complaints about the attendance policy, and past issues

---

[1] While Jefferies now asserts that these complaints were entirely fabricated by Welch, she offers no evidence to support this claim aside from text messages between herself and coworkers criticizing Welch and his job performance. (Doc. 25 at 8; Doc. 25-8 at 3-5.)

[2] Jefferies admitted verbally and in writing that there had been incidents with a patient's mother and the registration desk staff. (Doc. 23-1 ¶ 17.)

with Cornerstone staff. (Doc. 23-1 ¶ 19: Doc. 23-2 at 17; Doc 25-13 at 2.)

On May 24, 2017, Jefferies was contacted by Paul Earring of Regional's Human Resources department in response to her May 23 email. (Doc. 25 at 9.)[3] On June 13, 2017, Jefferies requested and received permission for a scheduled tardy for the morning of June 19, 2017, due to a "family issue" involving her son. (Doc. 23-2 at 30.) During this scheduled tardy, Jefferies filed an EEOC charge stating that she was the only CMA being held to the attendance standards and that she had been discriminated against "due to [her] race (Black) and in retaliation for [her] complaint of being singled out due to my race in violation of Title VII." (Doc. 25-18 at 2.)

When Jefferies returned to the office on June 19, 2017, she was immediately terminated by Wohlgemuth. (Doc. 23-3 ¶ 22.) Wohlgemuth told Jefferies she was being terminated based on emails Wohlgemuth had received from other employees alleging that Jefferies violated company policy. (Id. ¶¶ 12, 15–18, 22; Doc. 25-18 at 5.) These emails described Jefferies rummaging through a coworker's drawer, retrieving personal information (including a coworker's disciplinary action), and sharing it with other

---

[3] Though Jefferies states in her brief that during this call she suggested to Earring that if her complaints did not get handled she would like "a neutral party such as EEOC [Equal Employment Opportunity Commission] come in," she provides no record evidence for this statement. (Doc. 25 at 9.)

employees in violation of both Regional's employee code of conduct and its confidentiality policy. (Doc. 23-3 ¶¶ 12, 15-17; Doc. 25-22 at 4; Doc. 23-1 at 14-15; Doc. 23-2 at 34.) There is no indication in the record that Wohlgemuth knew that Jefferies had filed an EEOC charge; to the contrary, Wohlgemuth states in her affidavit that she was not aware that Jefferies had filed or planned to file a charge with the EEOC at the time she made the decision to terminate Jefferies's employment. (Doc. 23-3 ¶ 25.)

On June 20, 2017, Jefferies filed a second EEOC charge claiming she was terminated in retaliation for having filed the previous EEOC charge. (Doc. 25-18 at 5.)

On March 5, 2018, Jefferies filed this lawsuit against Regional in the General Court of Justice, Guilford County, District Court Division-Small Claims court. (Doc. 1-1.) Regional timely removed the action to this court based on federal question jurisdiction. (Doc. 1.) Regional then moved to dismiss the complaint, and the court granted the motion as to all claims against Welch and all claims against Regional except for Jefferies's retaliation claim now before the court. (Doc. 7; Doc. 11.) The court issued Jefferies a <u>Roseboro</u> letter,[4] notifying her of her obligation to respond, her ability to file evidence in support of her claim, and the consequence of likely judgment in

---

[4] <u>See</u> <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).

favor of the Defendant for failure to do so.  (Doc. 24.)  Jefferies has filed a response with multiple attachments.  (Doc. 25.)  The motion is therefore ready for decision.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate where evidence in the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 323–25 (1986).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In a motion for summary judgment the moving party satisfies its burden by showing an absence of evidence to support the nonmoving party's case.  Id. at 325.

In analyzing a summary judgment motion, the court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'"  Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting Charbonnages de France

6

v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).  If, applying this standard, the court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper."  Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

In response to a motion for summary judgment, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . affidavits or declarations . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  The responding party "may not rest upon mere allegations or denials of his pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'"  Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (noting that there is an affirmative duty for "the trial judge to prevent factually unsupported claims and defenses from proceeding to trial" (internal quotation marks omitted)).  "Nor can the nonmoving party 'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'"  Emmett, 532 F.3d at 297 (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

Jefferies proceeds pro se.  Pro se litigants are accorded some generosity in construing their pleadings and filings.

*Armstrong v. Rolm A. Siemans Co.*, 129 F.3d 1258, *1 (4th Cir. 1997) ("When reviewing a pro se complaint, federal courts should examine carefully the plaintiff's factual allegations, no matter how inartfully pleaded, to determine whether they could provide a basis for relief.") (citations omitted) (unpublished table opinion). Yet this does not require the court to ignore clear defects, *Bustos v. Chamberlain*, No. 3:09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009) (pleadings), or to "conjure up questions never squarely presented in the complaint," *Brice v. Jenkins*, 489 F.Supp.2d 538, 541 (E.D. Va. 2007) (internal quotation marks and citation omitted). Nor does it require that the court become an advocate for the unrepresented party. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Pro se litigants, like all litigants, are bound by the Federal Rules of Civil Procedure, especially as they relate to the fundamental requirement of presenting admissible evidence to support claims. In deference to Jefferies's pro se status, the court sent her a *Roseboro* letter on April 2, 2019, informing her that "[her] failure to respond, or if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the court to conclude that the defendants' contentions are undisputed . . . ." (Doc. 24.) A party's brief does not constitute evidence that the court can consider on a motion for summary judgment. Similarly, statements such as those submitted

by Jefferies that "do[] not subject the author to the penalty of perjury for any misstatements" (see Doc. 25-19 at 8) cannot by themselves defeat a summary judgment motion. Turner v. Godwin, 1:15CV770, 2018 WL 284978, at *3 (E.D. Va. Jan. 3, 2018); see also United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (explaining that courts should not consider unsworn arguments as evidence in opposition to a summary judgment motion). In contrast, affidavits that are signed under penalty of perjury, such as those of Jean Michelle Harrell and Rebecca Lynn Benfield (Doc. 25-19), are proper evidence. Moreover, although a verified complaint may serve as an affidavit for summary judgment purposes, see, e.g., Smith v. Blue Ridge Reg'l Jail Auth.-Lynchburg, 7:17-CV-00046, 2017 WL 6598124, at *2 n.5 (W.D. Va. Dec. 26, 2017), Jefferies submitted only an unverified complaint in this case (see Doc. 5). Much of Jefferies's remaining evidence is not authenticated; however, it will be considered because in many cases it appears to consist of documents from Regional's file and because it nevertheless fails to create a genuine dispute of material fact.

In the end, even where a motion for summary judgment is not opposed with sufficient admissible evidence to create a dispute of material fact, the court will review the motion to make an independent determination whether the moving party is entitled to summary judgment as a matter of law. Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 409 n.8 (4th Cir. 2010).

**B.    Retaliation Claim**

Absent direct evidence of intentional discrimination, claims under Title VII are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–07 (1973).  To establish a prima facie case of retaliation, a plaintiff must show (1) engagement in a protected activity; (2) a materially adverse action; and (3) a causal connection between the protected activity and the asserted materially adverse action. Strothers v. City of Laurel, 895 F.3d 317, 327 (4th Cir. 2018); Hinton v. Va. Union Univ., 185 F. Supp. 3d 807, 825–30 (E.D. Va. 2016) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).  Retaliatory actions "need not 'affect the terms and conditions of employment'" but must be "'materially adverse' [] such that they 'might have dissuaded a reasonable worker' from engaging in protected activity."  Strothers, 895 F.3d at 327 (quoting Burlington, 548 U.S. at 64, 68).  Once an employee makes out a prima facie case, the employer bears the burden of producing a legitimate nonretaliatory reason for the materially adverse action.  See id. at 328.  The employee then bears the burden of showing, by a preponderance of the evidence, that the employer's stated rationale is a pretext for retaliation.  Id.

Here, Regional argues that Jefferies has failed to establish a prima facie case of retaliation, as she has shown neither protected activity nor causation.  Regional also argues that

Jefferies has failed to establish that its nonretaliatory reason for terminating Jefferies was a pretext for retaliation. In response, Jefferies contends that she has established a prima facie case and that Regional's reasons for termination were pretextual.

### 1.  Protected Activities

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits retaliation by a private employer against an employee because the employee has (1) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII or (2) "opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). These are referred to as the participation clause and the opposition clause, respectively. Under the opposition clause, "an employee is protected when she opposes not only . . . employment actions actually unlawful under Title VII but also employment actions she reasonably believes to be unlawful." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015) (en banc) (alterations and internal quotation marks omitted); Strothers, 895 F.3d at 327. This opposition activity, however, is only protected if an employee's subjective

belief is "*objectively* reasonable in light of the facts." Peters
v. Jenney, 327 F.3d 307, 321 (4th Cir. 2003); see also Strothers,
895 F.3d at 327.

Jefferies claims that she engaged in three separate protected
activities: (1) warning Regional's Human Resources department that
she would involve the EEOC if her complaints were not resolved,
(2) sending the May 23, 2017 email to Wohlgemuth and Welch alleging
discrimination, and (3) filing an EEOC complaint on June 19, 2017.[5]
(Doc. 25 at 14.) Each will be addressed in turn.

Jefferies's first basis for liability appears to refer to her
alleged conversation with Earring, recounted in her brief. (Id.
at 9.) Jefferies argues that during this call she suggested to
Earring that if her complaints did not get handled she would like
"a neutral party such as EEOC [to] come in." (Id.) However, she
provides no record evidence for this statement, and because it
lacks evidentiary support it will not be considered by the court.
White, 366 F.3d at 300 (counseling against use of unsworn
statements to defeat summary judgment); Felty, 818 F.2d at 1128

---

[5] Though Jefferies also makes generalized attendance complaints and
intimates discrimination against her following the medical practice
merger and discrimination due to general personal animosity, Title VII
only provides protection against discrimination on the basis of "race,
color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1);
see also Burlington, 548 U.S. at 68 (citing with approval treatise noting
that "personality conflicts at work that generate antipathy and snubbing
by supervisors and co-workers are not actionable" (internal quotation
marks omitted)). As such, Jefferies's complaints based on non-protected
grounds do not constitute protected activity.

(noting that there is an affirmative duty for "the trial judge to prevent factually unsupported claims and defenses from proceeding to trial" (internal quotation marks omitted)).

Jefferies's second basis for liability — complaints of racial discrimination made to Wohlgemuth and Welch in her May 23, 2017 email — can constitute protected activity if Jefferies's subjective belief of discrimination was "*objectively* reasonable in light of the facts." Cuffee v. Tidewater Cmty. Coll., 409 F. Supp. 2d 709, 720 (E.D. Va. 2006) (citing Peters, 327 F.3d at 320–21), aff'd, 194 F. App'x 127 (4th Cir. 2006). Here, however, Jefferies's subjective belief was not objectively reasonable because there is "no evidence whatsoever, other than [her] own self-serving, unsubstantiated opinions" that Regional applied its disciplinary policies to discriminate against black employees. Coleman v. Loudoun Cty. Sch. Bd., 294 F. App'x 778, 782 (4th Cir. 2008); see Mann v. First Union Nat'l Bank, 185 F. App'x 242, 248 (4th Cir. 2006).[6] Specifically, the affidavit of former Regional CMA Jean Harrell, who is black, states that she was "never written up or given any warnings for [her] attendance or tardies." (Doc. 25-19 at 4.) Jefferies's own evidence demonstrates that Skeen, who is white, (Doc. 23-4 at 29) and Mary Beth Sullivan, also white,

---

[6] Unpublished decisions of the Fourth Circuit are not precedential and are generally entitled only to the weight of their persuasive reasoning. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

(id. at 35), who are both Regional CMAs, also received disciplinary action for violating the attendance policy. (Doc. 23-4 at 15, 21–22, 29, 35.) Jefferies's subjective belief of racially discriminatory enforcement of the attendance policy against her is not objectively reasonable because there is no evidence of discriminatory or unequal enforcement, or that anyone else at Regional believed the attendance policy was enforced in a discriminatory manner. See Coleman, 294 F. App'x at 782 (finding that plaintiff's belief that African-American candidates were being discriminated against was not objectively reasonable because there was "no evidence whatsoever, other than [the plaintiff's] own self-serving, unsubstantiated opinions, which is insufficient to stave off summary judgment, that the panel members discriminated against the African-American candidates"); Koenig v. McHugh, No. 3:11CV00060, 2013 WL 317584, at *10 (W.D. Va. Jan. 28, 2013) (finding that the plaintiff failed to show that her belief that she was being disciplined due to her race was objectively reasonable because the plaintiff provided no evidence other than her own bare assertions). In the absence of evidentiary support, Jefferies's subjective belief of discriminatory practices cannot be objectively reasonable and fails to qualify as protected activity. Perry v. Kappos, 776 F. Supp. 2d 182, 196 (E.D. Va. 2011) (finding that, where the plaintiff did not offer any examples of how other employees in similar situations were treated

differently or any other evidence corroborating his allegations, the plaintiff's own conclusory statements were insufficient to establish that the plaintiff's subjective belief that discrimination occurred was objectively reasonable.)

As to the third basis for liability, it is well established that filing an EEOC discrimination charge constitutes protected activity under the participation clause of Title VII. See 42 U.S.C. § 2000e-3(a); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998) (finding that plaintiff's filing of an EEOC discrimination charge constituted protected activity), abrogated on other grounds by Burlington, 548 U.S. 53 (2006); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (filing a complaint with the EEOC is protected activity).

### 2. Materially Adverse Action

To establish a materially adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 68 (quotation marks omitted). Regional does not dispute that termination is a materially adverse action. See Strothers, 895 F.3d at 328 ("[I]t is patently obvious and undisputed that termination is a materially adverse action"); Hinton, 185 F. Supp. 3d at 830. Therefore, the court finds that Jefferies's termination constitutes a materially

adverse action.[7]

### 3. Causal Connection

Finally, to establish a prima facie case of retaliation a plaintiff must prove that a causal connection existed between a plaintiff's protected activity and a defendant's materially adverse action. Strothers, 895 F.3d at 336. Here, Jefferies cannot establish any such connection between her filing an EEOC charge and her termination.

To establish a causal connection, Jefferies must show that (1) the protected activity preceded the materially adverse action and (2) that the employer knew the employee engaged in a protected activity. Causey v. Balog, 162 F.3d 795, 803-04 (4th Cir. 1998) (stating that "[k]nowledge of a charge is essential to a retaliation claim"); see also Dowe, 145 F.3d at 657 (explaining that "[s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case").

Jefferies meets the first element. She engaged in the

_____

[7] Jefferies also argues that Welch's enforcement of the attendance policy against her constitutes a materially adverse action. The court need not decide whether this is so because Jefferies cannot establish a causal connection on this ground as each enforcement of the attendance policy against Jefferies preceded her protected activity of filing the EEOC charge. See Causey v. Balog, 162 F.3d 795, 803-04 (4th Cir. 1998).

protected activity of filing an EEOC charge hours before her termination. As to the second element, however, Jefferies has failed to establish that Regional knew of her engagement in protected activity at the time of her termination. Though she argues that Welch, not Wohlgemuth, was the decisionmaker in her termination, she submits no evidence that either of them knew she had filed an EEOC complaint just hours earlier that day before her termination. See Conrad v. CSX Transp., Inc., 824 F.3d 103, 108 (4th Cir. 2016) (explaining that the "knowledge" relevant for a retaliation claim "must be tied to the decision-maker involved in the unfavorable personnel action"). While Jefferies has produced a text message where she informed Skeen of her intent to file an EEOC charge (Doc. 25-8 at 7), this does not provide any indication that either Wohlgemuth or Welch knew of Jefferies's EEOC charge, nor is there any other evidence to support a reasonable inference that they did. Rather, Wohlgemuth's statement in her affidavit indicates that she was the decisionmaker and she had no knowledge of Jefferies's EEOC complaint prior to making the decision to terminate her or her termination. (Doc. 23-3 ¶¶ 18, 25.) Therefore, because Jefferies has failed to establish a causal connection between her protected activity and materially adverse action, she has failed to establish a prima facie case of retaliation.

### 4.  Legitimate Nonretaliatory Reason

Even if Jefferies could establish a prima facie case of retaliation, the burden would then shift to Regional to produce a legitimate nonretaliatory reason for her termination.  Strothers, 895 F.3d at 328.  Once an employer articulates a legitimate nonretaliatory reason, an employee must prove, by a preponderance of the evidence, that the reason proffered by the employer was actually a pretext for retaliation.  Id.

Regional has offered a legitimate nonretaliatory reason for terminating Jefferies.  It explains it terminated Jefferies based on reports from three separate employees that she had rummaged through the drawer of another employee, removed confidential information, then shared that information with coworkers in violation of Regional's code of conduct and Jefferies's confidentiality pledge.  (Doc. 23-3 ¶¶ 12, 15–18, 22; id. at 10; Doc. 23-2 at 27-28; Doc. 25-22 at 4.)  Jefferies does not contest that she was provided with this reason at the time of her termination.

The violation of company policy is recognized as a legitimate reason for terminating an employee.  See Laing v. Fed. Express Corp., 703 F.3d 713, 721 (4th Cir. 2013) (finding violation of company conduct policy to be a legitimate nondiscriminatory reason); Brantley v. Nationwide Mut. Ins. Co., No. RDB-07-1322, 2008 WL 2900953, at *11 (D. Md. July 22, 2008) ("Noncompliance

with company policy is a legitimate, nondiscriminatory reason for firing someone"). Here, Regional's given reason qualifies as a legitimate nonretaliatory reason for terminating Jefferies's employment.

### 5. Pretext

Because Regional has produced a legitimate nonretaliatory reason for the materially adverse action, the burden shifts to Jefferies to produce evidence from which a jury could reasonably conclude that "the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." Strothers, 895 F.3d at 328. To carry this burden, a plaintiff must offer direct or circumstantial evidence that calls into question the employer's explanation. See Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 211 (4th Cir. 2014) (finding no reasonable inference of pretext in the absence of either direct or circumstantial evidence). In evaluating a plaintiff's allegation of pretext, courts are mindful that "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)).

Though Jefferies argues that the emails received by Wohlgemuth were falsified by Welch in furtherance of a conspiracy to end her employment, she provides no evidence to support these

allegations.[8]   That is, she provides no evidence to demonstrate "that the [employer's] proffered reason was not the true reason for the employment decision" or that she "has been the victim of intentional discrimination."   <u>Burdine</u>, 450 U.S. at 256; <u>see</u> <u>Hoyle v. Freightliner</u>, 650 F.3d 321, 338 (4th Cir. 2011) (finding pretext not established where plaintiff "presents no evidence that she was not terminated for [employer's proffered nondiscriminatory reason]"); <u>Gibson v. Marjack Co.</u>, 718 F. Supp. 2d 649, 658 (D. Md. 2010) (finding plaintiff's "unsubstantiated speculations" insufficient to establish pretext by a preponderance of the evidence).   Jefferies's conclusory contention fails to create a genuine dispute of material fact.   <u>Felty</u>, 818 F.2d at 1128 (4th Cir. 1987) ("Unsupported speculation is not sufficient to defeat a summary judgment motion.").

Therefore, even if Jefferies could establish a prima facie case of retaliation, she cannot demonstrate that Regional's proffered reasons for her termination were pretextual, and she has thus failed to meet her burden under <u>McDonnell Douglas</u>. Accordingly, Regional is entitled to summary judgment.

**III. CONCLUSION**

For the reasons stated,

---

[8] Although Jefferies submits text messages attached to her brief in support of her claims, these messages make no reference to the emails or the allegations resulting in Jefferies's termination and thus provide no support for her claims. (Doc. 25-17 at 2-23.)

IT IS THEREFORE ORDERED that Regional's motion for summary judgment (Doc. 22) is GRANTED and this action is DISMISSED WITH PREJUDICE.

                                   /s/  Thomas D. Schroeder
                              United States District Judge

August 14, 2019